DREVET HUNT, SBN 240487
Email: dhunt@cacoastkeeper.org
CALIFORNIA COASTKEEPER ALLIANCE
1100 11th Street, 3rd Floor
Sacramento, CA 95814
Telephone: (415) 606-0864

CHELSEA H. TU, SBN 294186
Email: chelsea@montereywaterkeeper.org
MONTEREY WATERKEEPER
P.O. Box 855
Seaside, CA 93955
Telephone: (831) 204-1381

*Attorneys for Plaintiff*
MONTEREY WATERKEEPER

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONTEREY WATERKEEPER, a non-profit corporation,<br><br>                    Plaintiff,<br>     v.<br><br>KRISTICH MONTEREY PIPE COMPANY, a California corporation,<br><br>                    Defendant. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Clean Water Act § 505, 33 U.S.C. §§ 1365 *et seq.*)** |

1  Monterey Coastkeeper, doing business as Monterey Waterkeeper ("Plaintiff"), hereby alleges:

2  **I.      JURISDICTION AND VENUE**

3      1.      This is a civil suit brought under the citizen suit enforcement provision of the Federal

4  Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. ("Clean Water Act" or "CWA"). See 33

5  U.S.C. § 1365.

6      2.      On March 18, 2024, Monterey Waterkeeper issued a 60-day notice letter ("Notice

7  Letter") to Kristich Monterey Pipe Company ("Kristich" or "Defendant"), pursuant to Clean

8  Water Act § 505(b), 33 U.S.C. § 1365(b). The Notice Letter informed Defendant that its

9  discharge of storm water is violating California's Statewide General Permit for Storm Water

10 Discharges Associated with Industrial Activities ("Storm Water Permit") and the Clean Water

11 Act, at the facility located at 225 Salinas Road, Suite B, Royal Oaks, California 95076 (the

12 "Facility").

13     3.      Kristich discharges storm water to the Blohm-Porter Marsh, which feeds into

14 connected waterbodies including Carneros Creek, Elkhorn Slough, and Monterey Bay

15 (collectively "Receiving Waters").

16     4.      The Notice Letter informed Defendant of Monterey Waterkeeper's intent to file suit

17 against Defendant to enforce the Storm Water Permit and the Clean Water Act.

18     5.      The Notice Letter was sent to Kristich's legally responsible person and registered

19 agent.

20     6.      The Notice Letter was also sent to the Acting Administrator of the United States

21 Environmental Protection Agency ("EPA"), the Acting Administrator of EPA Region IX, the

22 Executive Director of the State Water Resources Control Board ("State Board"), and the

23 Executive Officer of the Regional Water Quality Control Board, Central Coast Region

24 ("Regional Board"), as required by Section 505(b) of the CWA, 33 U.S.C. § 1365(b)(1)(A). The

25 Notice Letter is attached hereto as Exhibit A and is fully incorporated herein by reference.

26     7.      Jurisdiction: This Court has subject matter jurisdiction over the parties and this

27 action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. §§ 1331 and 2201 (an action for

28 declaratory and injunctive relief arising under the Constitution and laws of the United States).

8.    <u>Venue</u>: Venue is proper in the Northern District of California pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the sources of the violations are located within this judicial district.

9.    <u>Divisional Assignment</u>: This matter is properly heard in the San Jose Division, pursuant to Local Rule 3.2(c) and (e), because the violations occurred in Monterey County.

## II.   **PARTIES**

### A. Monterey Waterkeeper

10.    Monterey Waterkeeper is a 501(c)(3) environmental, non-profit public benefit organization in accordance with the laws of the State of California. Using law, policy, and science, Monterey Waterkeeper protects and restores drinkable, fishable, and swimmable waters in the Monterey Region and along California's Central Coast for all to enjoy. Monterey Waterkeeper conducts outdoor education and policy advocacy to ensure that all Central Coast residents have access to clean waters. Monterey Waterkeeper's outdoor education activities for youth and families allow participants to enjoy water quality testing, wildlife viewing, kayaking, and hiking in Elkhorn Slough and Monterey Bay. Monterey Waterkeeper also actively seeks federal and state agency implementation of the Clean Water Act and, where necessary, initiates enforcement actions on behalf of itself and its members.

11.    Monterey Waterkeeper's mailing address is P.O. Box 855, Seaside, CA.

12.    Monterey Waterkeeper's members use and enjoy the Receiving Waters and the areas around them for recreation, such as kayaking, picnicking, fishing, hiking, as well as for enjoyment of wildlife, including nearby populations of marine mammals such as sea otters and seals. Unlawful discharges of pollutants from the Facility into these waters impairs Monterey Waterkeeper's members' use and enjoyment of these waters.

13.    Defendant's violations of the CWA and the Storm Water Permit, including but not limited to its failure to monitor and/or report discharges, also injures Monterey Waterkeeper's ability to further its mission to protect California's waters.

14.    The interests of Monterey Waterkeeper and its members have been, are, and will continue to be adversely affected by Defendant's failure to comply with the CWA and the Storm

1   Water Permit.

2   **B. The Owner and/or Operator of the Facility**

3       15.    Defendant's principal address is 225 Salinas Road, Suite B, Royal Oaks, California

4   95076.

5       16.    Defendant is the owner of the Facility.

6       17.    Defendant is the operator of the Facility.

7       18.    Defendant is an active corporation registered in California.

8   **III.    STATUTORY BACKGROUND**

9   **A. The Clean Water Act**

10       19.    Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge

11   of any pollutant into a water of the United States unless the discharge complies with specific

12   enumerated sections of the CWA. Among other things, Section 301(a) prohibits discharges not

13   authorized by, or in violation of, the terms of a National Pollutant Discharge Elimination

14   System ("NPDES") permit issued pursuant to Section 402 of the CWA, 33 U.S.C. §§ 1311(a)

15   and 1342(b).

16       20.    Clean Water Act Section 402(p), 33 U.S.C. § 1342(p), establishes a framework for

17   regulating municipal and industrial storm water discharges under the NPDES program. States

18   with approved NPDES programs are authorized to regulate industrial storm water discharges

19   through individual permits issued to dischargers and/or through the issuance of a single,

20   statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342.

21       21.    Clean Water Act Section 301(b) requires that all point source dischargers, including

22   those discharging polluted storm water, must achieve technology-based effluent limitations by

23   utilizing Best Available Technology Economically Achievable ("BAT") for toxic and

24   nonconventional pollutants and Best Conventional Pollutant Control Technology ("BCT") for

25   conventional pollutants. 33 U.S.C. § 1311(b); 40 C.F.R. § 125.3(a)(2)(ii)-(iii).

26       22.    EPA promulgated regulations defining "waters of the United States." See 40 C.F.R.

27   § 122.2. EPA interprets waters of the United States to include not only traditionally navigable

28   waters but also other waters, including waters tributary to navigable waters, wetlands adjacent to

1    navigable waters, and other waters including intermittent streams that could affect interstate

2    commerce.

3        23.    The CWA regulates "relatively permanent, standing or continuously flowing bodies

4    of water 'forming geographic[al] features' that are described in ordinary parlance as 'streams,

5    oceans, rivers, and lakes.'" *Sackett v. EPA*, 143 S. Ct. 1322, 1336 (2023), quoting *Rapanos v.*

6    *United States*, 547 U.S. 715, 739 (2006).

7        24.    Section 505(a)(1) of the Clean Water Act provide for citizen enforcement actions

8    against any "person" who is alleged to be in violation of an "effluent standard or limitation . . .

9    or an order issued by the Administrator or a State with respect to such a standard or limitation."

10   33 U.S.C. § 1365(a)(i).

11       25.    Kristich is a "person" within the meaning of Section 502(5) of the Clean Water Act,

12   33 U.S.C. § 1362(5).

13       26.    An action for injunctive relief is authorized under Section 505(a) of the CWA, 33

14   U.S.C. § 1365(a).

15       27.    Each separate violation of the CWA occurring after November 2, 2015 subjects

16   Kristich to a penalty of up to $66,712 per day per violation. See 33 U.S.C. §§ 1319(d) and

17   1365(a); 40 C.F.R. § 19.4 (Adjustment of Civil Monetary Penalties for Inflation).

18       28.    Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), permits prevailing or

19   substantially prevailing parties to recover litigation costs, including attorneys' fees, experts'

20   fees, and consultants' fees.

21       29.    Section 303 of the CWA, 33 U.S.C. § 1313, requires states to adopt Water Quality

22   Standards, including water quality objectives and beneficial uses for navigable waters of the

23   United States. The CWA and implementing regulations prohibit discharges from causing or

24   contributing to a violation of such state Water Quality Standards. See 33 U.S.C. § 1313(b)(1)(c);

25   40 C.F.R. §§ 122.4(a), (d); 40 C.F.R. §§ 122.44(D)(1).

26   **B.  The Storm Water Permit**

27       30.    Pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, the Administrator of the

28   EPA has authorized California to issue NPDES permits, including general NPDES permits.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

1    California has designated the State Board and the Regional Water Quality Control Boards to

2    administer its NPDES program. City of Rancho Cucamonga v. Regional Water Quality Control

3    Bd., 135 Cal. App. 4th 1377, 1380-81 (2006).

4         31.    The Storm Water Permit is a statewide general NPDES permit issued by the State

5    Board pursuant to Section 402 of the CWA, 33 U.S.C. §§ 1342(b), (p), and 40 C.F.R § 123.25.

6         32.    Violations of the Storm Water Permit are violations of the CWA. Storm Water

7    Permit, § XXI(A).

8         33.    On July 1, 2015, the current Storm Water Permit became effective and was issued as

9    NPDES General Permit No. CAS000001 Order No. 2014-0057-DWQ. Storm Water Permit, §

10    I(A) (Finding 4).

11        34.    On November 6, 2018, the State Board amended the Storm Water Permit with Order

12    No. No. 2015-0122-DWQ, incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling;

13    2) TMDL Implementation Requirements; and 3) Statewide Compliance Options Incentivizing

14    On-Site or Regional Storm Water Capture and Use ("2018 Permit Amendment").

15        35.    In order to discharge storm water lawfully in California, industrial dischargers must

16    either secure coverage under the Storm Water Permit and comply with its terms or obtain and

17    comply with an individual NPDES permit. Storm Water Permit, § I(A) (Findings 8, 12).

18    **C. Effluent Limitations, Receiving Water Limitations, and Discharge Prohibitions**

19        36.    Effluent Limitation: § V(A) of the Storm Water Permit requires dischargers to

20    reduce or prevent pollutants associated with industrial activity in storm water discharges

21    through the implementation of BAT for toxic and/or non-conventional pollutants and BCT for

22    conventional pollutants. Toxic pollutants are listed at 40 C.F.R. § 401.15 and include copper,

23    lead, and zinc. Conventional pollutants are listed at 40 C.F.R. § 401.16 and include biological

24    oxygen demand ("BOD"), total suspended solids ("TSS"), oil and grease ("O&G"), pH, and

25    fecal coliform.

26        37.    Under the CWA and the Storm Water Permit, dischargers must employ Best

27    Management Practices ("BMPs") that constitute BAT and BCT to reduce or eliminate storm

28    water pollution. 33 U.S.C. § 1311(b); Storm Water Permit, § V(A).

1    38.    EPA has developed benchmark levels ("Benchmarks") that are objective guidelines

2    to evaluate whether a permittee's BMPs achieve compliance with the BAT/BCT standards. See

3    NPDES 2021 Issuance of the Multi-Sector General Permit for Stormwater Discharges

4    Associated with Industrial Activity ("Multi-Sector Permit"), 86 Fed. Reg. 10269, 10271-10274

5    (Feb. 19, 2021); Multi-Sector Permit, 80 Fed. Reg. 34,403, 34,405 (June 16, 2015); Multi-

6    Sector Permit, 73 Fed. Reg. 56,572, 56,574 (Sept. 29, 2008; Multi-Sector Permit, 65 Fed. Reg.

7    64,746, 64,766-67 (Oct. 30, 2000).

8    39.    The Storm Water Permit contains Numeric Action Levels ("NALs") that generally

9    mirror the 2008 EPA Benchmark Values. See Storm Water Permit, § I(M) (Finding 62).

10    40.    An annual NAL exceedance occurs when the average of all the analytical results for

11    a parameter from samples taken within a reporting year exceeds the annual NAL value for that

12    parameter. Storm Water Permit, § XII.A.1.

13    41.    An instantaneous maximum NAL exceedance occurs when two or more analytical

14    results from samples taken for any parameter within a reporting year exceed the instantaneous

15    maximum NAL. Storm Water Permit, § XII.A.2.

16    42.    A reporting year under the Storm Water Permit runs from July 1 to June 30.

17    43.    Annual NALs, not accounting for water hardness, for the following parameters are:

18    TSS—100 mg/L; nickel—1.02; iron—1.0 mg/L; nitrate plus nitrite as nitrogen ("N+N")—0.68

19    mg/L; and O&G—15 mg/L. Storm Water Permit, Table 2 at 47.

20    44.    Instantaneous maximum NALs, for the following parameters are: pH—6.0 – 9.0 s.u.;

21    TSS—400mg/L; O&G—25mg/L. Id.

22    45.    Receiving Water Limitation: § VI(A) of the Storm Water Permit prohibits storm

23    water discharges that cause or contribute to an exceedance of any "applicable Water Quality

24    Standard [WQS] in a Statewide Water Quality Control Plan or the applicable Regional Board's

25    Basin Plan."

26    46.    The Regional Board issued the Water Quality Control Plan for the Central Coast

27    Region ("Basin Plan") that, among other things, establishes quantitative and qualitative WQS

28    for the Receiving Waters.

47. The Basin Plan specifies existing beneficial uses for the Receiving Waters, including but not limited to navigation, commercial and sport fishing, water contact recreation, non-contact water recreation, cold freshwater habitat, warm freshwater habitat, wetland habitat, estuarine habitat, wildlife habitat, migration for aquatic organisms, habitat for preservation of rare or endangered species, habitat for spawning and reproduction of aquatic species, aquaculture, and shellfish harvesting. Basin Plan, Table 2-1.

48. Surface waters that cannot support the Beneficial Uses of those waters listed in the Basin Plan are designated as impaired water bodies pursuant to Section 303(d) of the Clean Water Act.

49. Watsonville Creek is listed on the 303(d) listed category 5 impaired waterways for E. coli, nitrate, dissolved oxygen, pH, and turbidity.

50. Carneros Creek is listed on the 303(d) listed category 5 impaired waterways for ammonia, chlorophyll-a, chlorpyrifos, copper, DDE, E. coli, nitrate, organophosphate pesticides, dissolved oxygen, turbidity, and pH.

51. Elkhorn Slough is listed on the 303(d) listed category 5 impaired waterways for copper, DDT, Dieldrin, nitrate, dissolved oxygen, pesticides, sedimentation, total coliform, and pH.

52. In addition, EPA has promulgated WQS for toxic priority pollutants ("California Toxics Rule" or "CTR") that apply to the Receiving Waters. 65 Fed. Reg. 31,682 (May 18, 2000); 40 C.F.R. § 131.38.

53. Discharges with pollutant levels exceeding the CTR criteria, the Basin Plan requirements, and/or other applicable WQS are violations of Receiving Water Limitation VI(A) of the Storm Water Permit.

54. Receiving Water Limitation VI(B) of the Storm Water Permit prohibits storm water discharges from adversely impacting human health or the environment.

55. WQS are established to protect human and environmental uses of the Receiving Waters.

56. Discharges with pollutant levels exceeding applicable WQS are violations of

1  Receiving Water Limitation VI(B) of the Storm Water Permit.

2      57.    Discharge Prohibition III.B of the Storm Water Permit prohibits permittees from

3  discharging materials other than storm water (i.e., non-storm water) either directly or indirectly

4  to waters of the United States, unless expressly authorized. Non-storm water discharges must be

5  either eliminated or permitted by a separate NPDES permit. Storm Water Permit, § III.B.

6  **D.  Storm Water Pollution Prevention Plan Requirements**

7      58.    Dischargers must develop and implement a Storm Water Pollution Prevention Plan

8  ("SWPPP") at the time industrial activities begin. Storm Water Permit, §§ I(I) (Finding 54),

9  X(B).

10     59.    The SWPPP must include the following:

11         a.   A narrative description and summary of all industrial activity, potential sources of

12     pollutants, and potential pollutants;

13         b.   a site map indicating the storm water conveyance system, associated points of

14     discharge, direction of flow, areas of actual and potential pollutant contact, including the

15     extent of pollution-generating activities, nearby water bodies, and pollutant control

16     measures;

17         c.   a description of storm water management practices;

18         d.   a description of the BMPs to be implemented to reduce or prevent pollutants in storm

19     water discharges and authorized non-storm water discharges;

20         e.   the identification and elimination of non-storm water discharges;

21         f.   the location where significant materials are being shipped, stored, received, and

22     handled, as well as the typical quantities of such materials and the frequency with which

23     they are handled;

24         g.   a description of dust and particulate-generating activities; and

25     60.    a description of individuals and their current responsibilities for developing and

26  implementing the SWPPP.

27     61.    The Storm Water Permit requires the discharger to evaluate the SWPPP on an annual

28  basis and revise it as necessary to ensure compliance with the Storm Water Permit. Storm Water

1    Permit, § X(A)-(B).

2        62.    The Storm Water Permit also requires that the discharger conduct an annual

3    comprehensive site compliance evaluation that includes a review of all visual observation

4    records, inspection reports and sampling and analysis results, a visual inspection of all potential

5    pollutant sources for evidence of, or the potential for, pollutants entering the drainage system, a

6    review and evaluation of all BMPs to determine whether the BMPs are adequate, properly

7    implemented and maintained, or whether additional BMPs are needed, and a visual inspection of

8    equipment needed to implement the SWPPP. Storm Water Permit, §§ X(B), Section XV.

9        63.    The SWPPP and site maps must be assessed annually and revised as necessary to

10   ensure accuracy and effectiveness. Storm Water Permit, §§ I(J) (Finding 55), X(B)(1).

11       64.    Significant SWPPP revisions must be certified and submitted by the discharger via

12   SMARTS within 30 days. Storm Water Permit, § X(B)(2).

13       65.    Dischargers are required to submit revisions to the SWPPP that are determined not to

14   be significant every three (3) months in the reporting year. Storm Water Permit, § X(B)(3);

15   Storm Water Permit, Fact Sheet, § II (I)(1).

16   **E. Monitoring and Reporting Requirements**

17       66.    The Storm Water Permit requires permittees to develop and implement a monitoring

18   and reporting program ("M&RP") prior to conducting, and in order to continue, industrial

19   activities. Storm Water Permit § X(I); *see id*., § XI. The M&RP must include procedures that

20   ensure Kristich implements the monitoring requirements in the Storm Water Permit. *Id*.

21       67.    Section XI(A)(1) of the Storm Water Permit requires dischargers to conduct monthly

22   visual observations of all discharge areas for the presence of non-storm water discharges and

23   sources, sources of industrial pollutants, and BMPs.

24       68.    Section XI(A)(2) of the Storm Water Permit requires dischargers to conduct visual

25   observations at the time that sampling occurs. The discharger shall document the presence of

26   any floating and suspended materials, O&G, discolorations, turbidity, or odor in the discharge,

27   and the source of any pollutants in storm water discharges from the facility. Storm Water

28   Permit, § XI(A)(2).

1   69.     Dischargers are required to maintain records of all visual observations, including

2   observation dates, locations observed, probable sources of pollutants, and responses taken to

3   reduce or prevent pollutants from contacting storm water discharges. Storm Water Permit, §

4   XI(A)(3).

5   70.     Section XI(B)(2) of the Storm Water Permit requires dischargers to collect and

6   analyze storm water samples from two (2) Qualifying Storm Events ("QSEs") within the first

7   half of each reporting year (July 1 to December 31), and two (2) QSEs within the second half of

8   each reporting year (January 1 to June 30).

9   71.     Section XI(B)(6) of the Storm Water Permit requires dischargers to analyze storm

10   water samples for TSS, O&G, and pH; additional parameters applicable to the facility's SIC

11   code and that result from industrial activities; additional applicable industrial parameters related

12   to receiving waters with 303(d) listed impairments or approved TMDLs; and additional

13   parameters required by the Regional Board.

14   72.     Dischargers must submit all sampling results via SMARTS within 30 days of

15   obtaining the results. Storm Water Permit, § XI(B)(11)(a).

16   **F. Exceedance Response Action Requirements**

17   73.     When the Storm Water Permit became effective on July 1, 2015, all permittees were

18   in "Baseline status." Storm Water Permit, § XII(B).

19   74.     A permittee's Baseline status for any given parameter changes to "Level 1 status" if

20   sampling results indicate an NAL exceedance for that parameter. Storm Water Permit, § XII(C).

21   75.     By October 1 following commencement of Level 1 status, permittees are required to:

22   complete an evaluation, with the assistance of a Qualified Industrial Stormwater Practitioner

23   ("QISP"), of the industrial pollutant sources at the facility that are or may be related to the NAL

24   exceedance(s); and identify the corresponding BMPs in the SWPPP and any additional BMPs

25   and SWPPP revisions necessary to prevent future NAL exceedances and to comply with the

26   requirements of Storm Water Permit. Storm Water Permit, § XII(C)(1)(a)-(c).

27   76.     Based upon this Level 1 status evaluation, the permittee is required to, as soon as

28   practicable but no later than January 1 following commencement of Level 1 status, certify and

1    submit via SMARTS a Level 1 ERA Report prepared by a QISP that includes a summary of the

2    Level 1 ERA Evaluation and a detailed description of the SWPPP revisions and any additional

3    BMPs for each parameter that exceeded an NAL. See Storm Water Permit, § XII(C)(2)(a)(i)-

4    (ii).

5        77.    A permittee's Level 1 status for any given parameter shall change to Level 2 status if

6    sampling results indicate an NAL exceedance for that same parameter while the discharger is in

7    Level 1. Level 2 status commences on July 1 following the reporting year during which the

8    NAL exceedance(s) occurred. See Storm Water Permit, § XII(D).

9        78.    A discharger in Level 2 status shall submit a Level 2 ERA Action Plan prepared by a

10   QISP that addresses each new Level 2 NAL exceedance by January 1 following the reporting

11   year during which the NAL exceedances occurred. On January 1 of the reporting year following

12   the submittal of the Level 2 ERA Action Plan, a Discharger shall certify and submit a Level 2

13   ERA Technical Report prepared by a QISP to SMARTS. See, Storm Water Permit, § XII(D).

14   **G. Water Quality Based Corrective Action Requirements**

15       79.    When a permittee's discharge is causing or contributing to an exceedance of

16   Receiving Water Limitations, the discharger must comply with the Water Quality Based

17   Corrective Actions set forth in Section XX.B of the Storm Water Permit, and report to the

18   Regional Board regarding the exceedance.

19       80.    In complying with the Water Quality Corrective Action, the discharger must:

20       81.    Conduct a facility evaluation to identify pollutant source(s) within the facility

21   associated with industrial activity and the implementation of BMPs described in the SWPPP;

22       82.    Assess the facility's SWPPP and its implementation to determine whether additional

23   BMPs or SWPPP implementation measures are necessary to reduce or prevent pollutants in

24   industrial storm water discharges to meet Receiving Water Limitations (Section VI); and

25       83.    Certify and submit via SMARTS a report based upon the above facility evaluation

26   and assessment that: (1) Additional BMPs and/or SWPPP implementation measures have been

27   identified and included in the SWPPP to meet the Receiving Water Limitations (Section VI) or

28   applicable NELs (Attachment E); (2) or that no additional BMPs or SWPPP implementation

1    measures are required to reduce pollutants in industrial storm water discharges to meet the

2    Receiving Water Limitation (Section VI).

3    **H. Annual Comprehensive Review and Report Requirements**

4    84.    Section XV of the Storm Water Permit requires a discharger to conduct an annual

5    evaluation for each reporting year.

6    85.    The discharger shall revise and implement the SWPPP within 90 days of the annual

7    evaluation. Storm Water Permit, § XV.

8    86.    The annual evaluations shall include a review of all monitoring data; inspection of all

9    pollutant sources, industrial activity, BMPs, and equipment needed to implement BMPS; and a

10    review of effectiveness of BMPs to prevent pollutants in storm water. Storm Water Permit, §

11    XV.

12    87.    Section XVI of the Storm Water Permit requires a discharger to certify and submit

13    via SMARTS an Annual Report no later than July 15th following each reporting year using the

14    standardized format and checklists in SMARTS and include: 1) a compliance checklist that

15    indicates whether a discharger complies with, and has addressed all applicable requirements of

16    this General Permit; 2) an explanation for any non-compliance of requirements within the

17    reporting year, as indicated in the compliance checklist; and an identification, including page

18    numbers and/or sections, of all revisions made to the SWPPP within the reporting year.

19    **IV.**    **STATEMENT OF FACTS**

20    **A. The Receiving Waters**

21    88.    Storm water from the Facility discharges to Watsonville Creek.

22    89.    Storm water discharges from the Facility reach Blohm-Porter Marsh.

23    90.    Storm water discharges from the Facility reach Carneros Creek.

24    91.    Storm water discharges from the Facility reach Elkhorn Slough.

25    92.    Storm water discharges from the Facility reach Monterey Bay.

26    93.    Watsonville Creek is a "water of the United States" under the CWA.

27    94.    Blohm-Porter Marsh is a "water of the United States" under the CWA.

28    95.    Carneros Creek is a "water of the United States" under the CWA.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

96.     Elkhorn Slough is a "water of the United States" under the CWA.

97.     Monterey Bay is a "water of the United States" under the CWA.

**B. The Facility and Storm Water Permit Coverage**

98.     On April 19, 2019, Defendant submitted an NOI for Storm Water Permit coverage at the Facility ("2019 NOI").

99.     The Facility's SIC code is 3272 (Concrete Products, Except Block and Brick).

100.    Defendant owns and operates an industrial facility at 225 Salinas Road, Suite B, Royal Oaks, California 95076 that engages in concrete pipeline manufacturing, dealing predominantly with ferrous materials, though other materials and metals are also present at the Facility.

101.    Defendant engages in industrial activities at the Facility.

102.    There are at least two stormwater discharge locations at the Facility, Stormwater Sample Site Number 1 ("SW-1") and Stormwater Sample Site Number 2 ("SW-2").

103.    Storm water from the bulk of the site flows to drop inlets in several locations within the site.

104.    All of these drop inlets are connected to a pipe that travels underground from the southern boundary of the site to the local MS4.

105.    The underground storm drain system at the site also collects stormwater from an unknown acreage of developed land to the north and east of the site.

106.    Samples of storm water discharges from the underground stormwater drain system are collected at SW-1.

107.    Storm water from a small section of the northern portion of the site discharges at SW-2 to an unlined pond in a field north of the site.

108.    Discharges from SW-1 flow approximately one-mile underground in the local MS4 system until the MS4 emerges in an open ditch along Salinas Road near Trafton Road (Southeast corner of intersection). This ditch is a channelized and realigned segment of Watsonville Creek.

109.    Watsonville Creek then flows south approximately 1.5 miles to a tidally influenced portion of Blohm-Porter Marsh, joining Carneros Creek—before discharges ultimately flow into Elkhorn Slough.

110.    Pollutants potentially present at the Facility include but are not limited to: pH affecting substances; metals, such as iron; TSS; and O&G.

**C. Pollutant Levels in the Facility's Storm Water Discharges**

111.    A December 24, 2020 Level 1 Exceedance Response Action ("ERA") Report shows that, during the 2019–2020 Industrial Permit reporting year, the storm water discharges from the Facility exceeded the average annual NAL for iron.

112.    A December 28, 2021 Level 2 ERA Action Plan shows that, during the 2020–2021 reporting year, the Storm water discharges from the Facility exceeded the average annual NAL for iron.

113.    January 6, 2022 and May 25, 2022 laboratory reports show that, during the 2021–2022 reporting year, the storm water discharges from the Facility exceeded the average annual NAL for iron.

114.    December 19, 2022 and January 6, 2023 laboratory reports show that, during the 2022–2023 reporting year, the storm water discharges from the Facility exceeded the average annual NAL for iron.

115.    December 19, 2022 and January 6, 2023 laboratory reports show that, during the 2022–2023 reporting year, the storm water discharges from the Facility exceeded the average annual NAL for TSS.

116.    A January 6, 2023 laboratory report shows that the Facility exceeded the instantaneous NAL for TSS on December 1, 2022.

**D. The Facility's SWPPP**

117.    Kristich submitted a SWPPP in April 2019 ("2019 SWPPP").

118.    Defendant has never revised its SWPPP.

119.    Despite identifying (in the ERA reports Kristich submitted) existing BMPs rated "currently not effective" and additional recommended BMPs, Kristich did not modify the SWPPP.

120.    The 2019 SWPPP identifies BMPs that Defendant purports to implement at the Facility to reduce pollutants in storm water discharges to comply with the Storm Water Permit.

121.    These BMPs include employee training; good housekeeping; preventative

1  maintenance; spill and leak prevention and response; material handling and waste management;

2  erosion and sediment control; quality assurance and record keeping; minimization of exposure to

3  storm water, concrete pipe curing area, finished pipe storage areas, storm water drop inlet filters,

4  storm water discharge treatment system, and storm water sampling basin.

5  122.  The BMPs identified in the 2019 SWPPP do not meet BAT or BCT standards, and are

6  not sufficient to ensure the Facility's discharges meet NALs or WQS, as evidenced by continued

7  exceedances of the Storm Water Permit's iron and TSS NALs in the Facility's storm water

8  samples, as well as by continued violations of Receiving Water Limitations.

9  **E.  Kristich's Monitoring and Reporting**

10  123.   Kristich did not report any visual observations in reporting year 2018-2019.

11  124.   Kristich did not conduct any visual observations in reporting year 2018-2019.

12  125.  Kristich did not report any sampling of discharges in reporting year 2018-2019.

13  126.  Kristich did not sample any discharges in reporting year 2018-2019.

14  127.  Kristich did not report any sampling of O&G discharges in reporting year 2019-2020.

15  128.  Kristich did not report any sampling of O&G discharges in reporting year 2020-2021.

16  129.  Kristich did not report any sampling of O&G discharges in reporting year 2021-2022.

17  130.  Kristich did not sample any O&G discharges in reporting year 2021-2022.

18  131.  Kristich sampled its storm water discharges three times during reporting year 2021-

19  2022 on November 9, 2021, December 12, 2021, and April 21, 2022.

20  132.  Kristich sampled its storm water discharges two times during reporting year 2022-

21  2023 on November 8, 2022 and December 1, 2022.

22  133.   Despite ample rain events, Defendant has failed to report and/or sample the requisite

23  4 qualifying sampling events in 2022.

24  134.   Despite ample rain events, Defendant has failed to report and/or sample the requisite

25  4 qualifying sampling events in 2023.

26  135.  Defendant failed and continues to fail to develop an M&RP that ensures the collection

27  of storm water samples from all discharge locations at the Facility or from a sample location that

28  is representative of the Facility's discharges.

136.    Defendant failed to analyze storm water samples for all parameters that are present as a result of industrial activities and applicable industrial parameters related to receiving waters with 303(d) listed impairments.

137.    Defendant failed to analyze storm water samples for nickel, a heavy metal and pollutant associated with industrial activities at the Facility.

138.    Defendant failed to analyze storm water samples for chromium IV, a heavy metal and pollutant associated with industrial activities at the Facility.

139.    Defendant failed to analyze storm water samples for cadmium, a heavy metal and pollutant associated with industrial activities at the Facility.

140.    Defendant failed to conduct the monthly visual observations of storm water discharges in violation of Section XI.A.3 of the Storm Water Permit.

**F.  Kristich's Exceedance Response Actions**

141.    Defendant failed and continues to fail to follow the ERA Program as required by the Storm Water Permit.

142.    Kristich's sample results revealed pollutant levels above the annual NAL for iron in the 2019-2020 reporting year.

143.    Kristich entered Level 1 status for iron on July 1, 2020.

144.    Kristich's Level 1 ERA Report for iron did not meet the requirements of the Storm Water Permit, including but not limited to identifying BMPs necessary to prevent future NAL exceedances and otherwise to comply with the requirements of the Storm Water Permit.

145.    Kristich's sample results revealed pollutant levels above the annual NAL for iron in the 2020-2021 reporting year.

146.    Kristich entered Level 2 status for iron on July 1, 2021.

147.    Kristich's Level 2 ERA Action Plan for iron did not meet the requirements of the Storm Water Permit, including but not limited to failing to identify BMPs necessary to prevent future NAL exceedances and otherwise to comply with the requirements of the Storm Water Permit.

148.    Since Kristich began sampling its discharges in the 2019-2020 reporting year,

1    discharges at the Facility exceeded the iron annual NAL every year since obtaining permit

2    coverage.

3         149.    Kristich's iron NAL exceedances show a trend of increasing severity.

4         150.    Kristich's 2023 Annual Report states that a required Level 2 ERA Technical Report

5    has not been updated, but does not discuss why the Facility failed to update the report and when

6    it will be updated.

7         151.    Kristich's sample results revealed pollutant levels above the annual NAL for TSS in

8    the 2022-2023 reporting year.

9         152.    Kristich entered Level 1 status for TSS on July 1, 2023.

10        153.    The Facility exceeded the instantaneous NAL for TSS on December 1, 2022.

11        154.    Kristich's Level 2 Action Plan for TSS did not comply with the requirements of the

12   Storm Water Permit, including but not limited to failing to identify BMPs to achieve compliance

13   with the effluent limitations of the Storm Water Permit and to eliminate future NAL exceedances.

14   **G. Water Quality Based Corrective Actions and Annual Reports**

15        155.    Kristich has not submitted an adequate Water Quality Based Corrective Action

16   Report, pursuant to Storm Water Permit, Section XX.B, despite discharges of elevated levels of

17   TSS to downstream waterbodies impaired for turbidity and sedimentation.

18        156.    Defendant has consistently failed to conduct annual evaluations pursuant to Storm

19   Water Permit, Section XV.

20        157.    Defendant has failed and continues to fail to submit Annual Reports that comply with

21   reporting requirements.

22        158.    Defendant failed to submit an Annual Report in 2018-2019.

23        159.    Defendant's Annual Reports for other reporting years have several deficiencies.

24        160.    The deficiencies in Defendant's Annual Reports for other reporting years include but

25   are not limited to the following factually incorrect certified statement: (1) claiming a complete

26   Annual Comprehensive Site Compliance Evaluation was done pursuant to Section XV of the

27   Storm Water Permit; (2) implicitly claiming the SWPPP's BMPs address existing potential

28   pollutant sources; (3) implicitly claiming the SWPPP complies with the Storm Water Permit; and

1    (4) claiming that the Facility sampled the required number of qualifying storm events during the

2    reporting year pursuant to Section XI.B.

3        161.    In reporting year 2021-2022, Defendant reported that insufficient discharges occurred

4    during operating hours, when precipitation records show that a sufficient number of QSEs

5    occurred during that time period, and when the Permit makes allowance for discharges that start

6    during non-business hours, by permitting facilities to collect samples when business hours begin,

7    provided that 12 hours have not elapsed since the discharge began.

8        162.    Defendant's annual reports fail to adequately identify the Facility's violations of the

9    Storm Water Permit, or fail to identify any steps that will be taken to correct them as required.

10    For example, self-reported storm water samples from the Facility contain concentrations of

11    pollutants above NALs, demonstrating that the Facility BMPs do not adequately address existing

12    pollutant sources.

13    **V.    CLAIMS FOR RELIEF**

14                    **FIRST CAUSE OF ACTION**

15    **Discharges of Polluted Storm Water in Violation of the Storm Water Permit's Effluent**

16                **Limitations and the Clean Water Act**

17            **33 U.S.C. §§ 1311(a), 1342, 1365(a), and 1365(f)**

18        163.    Plaintiff incorporates the allegations contained in the above paragraphs as though

19    fully set forth herein.

20        164.    Defendant has failed and continues to fail to reduce or prevent pollutants associated

21    with industrial activities at the Facility from discharging from the Facility through implementation

22    of BMPs that achieve BAT/BCT.

23        165.    Discharges of storm water from Defendant's Facility containing levels of pollutants

24    that do not achieve compliance with BAT/BCT standards from the Facility occur every time storm

25    water discharges from the Facility.

26        166.    Defendant's failure to develop and/or implement BMPs that achieve the pollutant

27    discharge reductions attainable via BAT or BCT at the Facility is a violation of the Storm Water

28    Permit and the CWA. See Storm Water Permit, § I(D) (Finding 32), Effluent Limitation V(A); 33

1    U.S.C. § 1311(b).

2    167.    Defendant has violated and will continue to violate the Storm Water Permit's Effluent

3   Limitations each and every time storm water containing levels of pollutants that do not achieve

4   BAT/BCT standards discharges from the Facility.

5    168.    Defendant's violations of Effluent Limitations of the Storm Water Permit and the

6   CWA are ongoing and continuous.

7    169.    Each day since at least April 29, 2019 that Defendant has discharged storm water

8   containing pollutants in violation of the Storm Water Permit is a separate and distinct violation of

9   Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

10    170.    By committing the acts and omissions alleged above, Defendant is subject to an

11   assessment of civil penalties for each and every violation of the CWA occurring from May 5,

12   2019, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d),

13   1365, and 40 C.F.R. § 19.4.

14    171.    An action for injunctive relief is authorized by CWA Section 505(a), 33 U.S.C. §

15   1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm

16   Plaintiff, Plaintiff's members, and the citizens of the State of California, for which harm Plaintiff

17   has no plain, speedy, or adequate remedy at law.

18    172.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

19   controversy exists as to the rights and other legal relations of the Parties.

20                 **SECOND CAUSE OF ACTION**

21       **Defendant's Discharges of Contaminated Storm Water in Violation of**

22      **the Storm Water Permit's Receiving Water Limitations and the Clean Water Act**

23         **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

24    173.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully

25   set forth herein.

26    174.    Discharges of storm water from Defendant's containing levels of pollutants that

27   adversely impact human health and/or the environment from the Facility occur each time storm

28   water discharges from the Facility.

175.   Storm water containing levels of pollutants that cause or contribute to exceedances of WQS has discharged and continues to discharge from the Facility each time storm water discharges from the Facility.

176.   Defendant has violated and will continue to violate the Storm Water Permit's Receiving Water Limitations each and every time storm water containing levels of pollutants that adversely impact human health and/or the environment and that cause or contribute to exceedances of WQS discharges from the Facility.

177.   Defendant's violations of Receiving Water Limitations of the Storm Water Permit and the CWA are ongoing and continuous.

178.   Each and every violation of the Storm Water Permit's Receiving Water Limitations is a separate and distinct violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

179.   By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 5, 2019, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

180.   An action for injunctive relief under the Clean Water Act is authorized by Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff, Plaintiff's members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

181.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

**THIRD CAUSE OF ACTION**

**Defendant's Unauthorized Non-Storm Water Discharges in Violation of the Storm Water Permit's Discharge Prohibitions and the Clean Water Act**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

182.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

183.   Unauthorized non-storm water discharges occur at the Facility due to inadequate BMP

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

1    development and/or implementation.

2    184.    Defendant's unauthorized non-storm water discharges violate the Storm Water Permit

3    and the CWA. See Storm Water Permit, § III.B, 33 U.S.C. § 1311(a).

4    185.    Defendant has violated and will continue to violate the Storm Water Permit and the

5    CWA each and every time Defendant discharges unauthorized non-storm water.

6    186.    Each day since at least April 29, 2019, that Defendant has discharged prohibited non-

7    storm water in violation of the Storm Water Permit is a separate and distinct violation of Section

8    301(a) of the CWA, 33 U.S.C. § 1311(a).

9    187.    By committing the acts and omissions alleged above, Defendant is subject to an

10   assessment of civil penalties for each and every violation of the CWA occurring from May 5,

11   2019 to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d),

12   1365, and 40 C.F.R. § 19.4.

13   188.    An action for injunctive relief under the Clean Water Act is authorized by Section

14   505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above

15   would irreparably harm Plaintiff, Plaintiff's members, and the citizens of the State of California,

16   for which harm they have no plain, speedy, or adequate remedy at law.

17   189.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

18   controversy exists as to the rights and other legal relations of the Parties.

19   **FOURTH CAUSE OF ACTION**

20   **Defendant's Failure to Develop, Implement, and/or Revise an Adequate SWPPP in**

21   **Violation of the Storm Water Permit and the Clean Water Act**

22   **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

23   190.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully

24   set forth herein.

25   191.    Defendant has failed and continues to fail to develop an adequate SWPPP for the

26   Facility, in violation of Section X of the Storm Water Permit.

27   192.    Defendant has failed, and continues to fail, to implement the SWPPP for the Facility,

28   in violation of Section X of the Storm Water Permit.

193.    Defendant has failed, and continues to fail, to adequately revise the SWPPP for the Facility, in violation of Section X of the Storm Water Permit.

194.    Defendant has been in violation of Section X of the Storm Water Permit at the Facility every day from at least June 25, 2018, to the present.

195.    Defendant's violations of Section X of the Storm Water Permit and the CWA at the Facility are ongoing and continuous.

196.    Defendant will continue to be in violation of the Storm Water Permit and the CWA each and every day Defendant fails to adequately develop, implement, and/or revise the SWPPP for the Facility.

197.    Each and every violation of the Storm Water Permit's SWPPP requirements at the Facility is a separate and distinct violation of the CWA.

198.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 5, 2019, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

199.    An action for injunctive relief under the CWA is authorized by Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff, Plaintiff's members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

200.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

**FIFTH CAUSE OF ACTION**

**Defendant's Failure to Develop, Implement, and/or Revise an Adequate Monitoring Implementation Plan in Violation of the Storm Water Permit and the Clean Water Act**

**33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

201.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

202.    Defendant has failed, and continues to fail, to develop an adequate monitoring

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

implementation plan for the Facility, in violation of Sections X(I) and XI of the Storm Water Permit.

203.    Defendant has failed, and continues to fail, to implement a monitoring implementation plan for the Facility that complies with Sections X(I) and XI of the Storm Water Permit.

204.    Defendant has failed, and continues to fail, to revise a monitoring implementation plan for the Facility, in violation of Sections X(I) and XI of the Storm Water Permit.

205.    Defendant has been in violation of the Storm Water Permit's monitoring and reporting requirements at the Facility every day from at least June 25, 2018, to the present.

206.    Defendant's violations of their Storm Water Permit's monitoring requirements and the CWA at the Facility are ongoing and continuous.

207.    Defendant will continue to be in violation of Sections X(I) and XI of the Storm Water Permit and the CWA each and every day it fails to adequately develop, implement, and/or revise their monitoring and reporting plan for the Facility.

208.    Each and every violation of the Storm Water Permit's monitoring and reporting requirements at the Facility is a separate and distinct violation of the CWA.

209.    By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring from May 5, 2019, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

210.    An action for injunctive relief under the CWA is authorized by Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff, Plaintiff's members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

211.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## SIXTH CAUSE OF ACTION

**Defendant's Failure to Comply with NAL Exceedance Response Action Requirements in Violation of the Storm Water Permit and Clean Water Act**

1      **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

2      212.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully

3      set forth herein.

4      213.    Defendant has failed and continues to fail to follow the ERA Program as required by

5      the Storm Water Permit.

6      214.    Every day Defendant conducts operations at the Facility without implementing the

7      ERA Program as required by the Storm Water Permit is a separate and distinct violation of the

8      Storm Water Permit and the Clean Water Act.

9      215.    Defendant has been in daily and continuous violation of the Storm Water Permit's

10     ERA Program requirements every day since January 1, 2021. These violations are ongoing.

11     216.    Defendant is subject to civil penalties for all violations of the Clean Water Act on a

12     per day per violation basis for each individual violation of the Storm Water Permit and the Clean

13     Water Act occurring since that date.

14     217.    By committing the acts and omissions alleged above, Defendant is subject to an

15     assessment of civil penalties for each and every violation of the CWA occurring from January 1,

16     2021, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d),

17     1365, and 40 C.F.R. § 19.4.

18     218.    An action for injunctive relief under the CWA is authorized by Section 505(a), 33

19     U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would

20     irreparably harm Plaintiff, Plaintiff's members, and the citizens of the State of California, for

21     which harm they have no plain, speedy, or adequate remedy at law.

22     219.    An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

23     controversy exists as to the rights and other legal relations of the Parties.

24     **SEVENTH CAUSE OF ACTION**

25     **Defendant's Failure to Comply with Water Quality Based Corrective Action Procedures in**

26     **Violation of the Storm Water Permit and Clean Water Act**

27     **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

28     220.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully

1    set forth herein.

2        221.   Defendant has not submitted an adequate Water Quality Based Corrective Action

3    Report as required by Storm Water Permit Section XX.B.

4        222.   Defendant's ongoing failure to submit an adequate and necessary Water Quality Based

5    Corrective Action Report has occurred since at least December 1, 2022, as a result of Defendant's

6    continued and ongoing discharges of TSS and other pollutants that contribute to the impairments

7    in downstream waters.

8        223.   Every day Defendant conducts operations at the Facility without developing and

9    implementing an adequate Water Quality Corrective Action as required by the Storm Water

10   Permit is a separate and distinct violation of the Storm Water Permit and the Clean Water Act.

11       224.   Defendant has been in daily and continuous violation of the Storm Water Permit's

12   Water Quality Corrective Action requirements every day since at least December 1, 2022. This

13   violation is ongoing.

14       225.   By committing the acts and omissions alleged above, Defendant is subject to civil

15   penalties for all violations of the Clean Water Act on a per day per violation basis for each

16   individual violation of the Storm Water Permit and the Clean Water Act.

17       226.   An action for injunctive relief under the CWA is authorized by Section 505(a), 33

18   U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would

19   irreparably harm Plaintiff, Plaintiff's members, and the citizens of the State of California, for

20   which harm they have no plain, speedy, or adequate remedy at law.

21       227.   An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual

22   controversy exists as to the rights and other legal relations of the Parties.

23                          **<u>EIGHTH CAUSE OF ACTION</u>**

24   **Defendant's Failure to Comply with the Storm Water Permit's Annual Evaluation and**

25   **Report Requirements in Violation of the Storm Water Permit and the Clean Water Act**

26                  **33 U.S.C. §§ 1311(a), 1342, 1365(a) and 1365(f)**

27       228.   Plaintiff incorporates the allegations contained in the above paragraphs as though fully

28   set forth herein.

229.     Defendant has failed, and continues to fail, to conduct timely and/or adequate annual evaluations to the Regional Board, in violation of Section XV of the Storm Water Permit.

230.     Defendant has failed, and continues to fail, to submit timely and/or accurate Annual Reports to the Regional Board, in violation of Section XVI of the Storm Water Permit.

231.     Defendant has been in violation of Sections XV and XVI of the Storm Water Permit since at least April 29, 2019.

232.     Defendant's violations of Sections XV and XVI of the Storm Water Permit and the CWA are ongoing and continuous.

233.     By committing the acts and omissions alleged above, the Defendant is subject to an assessment of civil penalties for each and every violation of the CWA occurring May 5, 2019, to the present, pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d), 1365, and 40 C.F.R. § 19.4.

234.     An action for injunctive relief under the CWA is authorized by Section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above would irreparably harm Plaintiff, Plaintiff's members, and the citizens of the State of California, for which harm they have no plain, speedy, or adequate remedy at law.

235.     An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

## VI.     RELIEF REQUESTED

236.     WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

237.     A Court order declaring Defendant to have violated and to be in violation of Sections 301(a) and (b) and 402 of the Clean Water Act, 33 U.S.C. §§ 1311(a) and (b); for its unlawful discharges of pollutants from the Facility in violation of a permit issued pursuant to Section 402(p) of the CWA, 33 U.S.C. § 1342(p), for failing to meet effluent standards limitations which include BAT/BCT requirements, and for failing to comply with the substantive and procedural requirements of the Storm Water Permit and the CWA.;

238.     A Court order enjoining Defendant from violating the substantive and procedural

1    requirements of the Storm Water Permit and Sections 301(a) and 402 of the CWA, 33 U.S.C.

2    §§ 1311(a), 1342;

3    239.    A Court order assessing civil monetary penalties for each violation of the CWA at

4    $66,712 per day per violation, as permitted by 33 U.S.C. §§ 1319(d) and 40 C.F.R. § 19.4

5    (Adjustment of Civil Monetary Penalties for Inflation).

6    240.    A Court order awarding Plaintiff its reasonable costs of suit, including attorney,

7    witness, expert, and consultant fees, as permitted by Section 505(d) of the Clean Water Act, 33

8    U.S.C. § 1365(d); and

9    241.    Any other relief as this Court may deem appropriate.

10

11   DATED: July 5, 2024

_____

Drevet Hunt
12                                                                    Counsel for Plaintiff
Monterey Waterkeeper

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES